CHRISTOPHER A. LILLY (SBN 192479)
Email:        clilly@troygould.com
ARVIN TSENG (SBN 245648)
Email:        atseng@troygould.com
TROYGOULD PC
1801 Century Park East, 16th Floor
Los Angeles, CA 90067-2367
Telephone:  (310) 553-4441
Facsimile:    (310) 201-4746

J. CONOR CORCORAN  (ADMITTED PRO HAC VICE IN CA)
Pennsylvania Bar I.D. No. 89111
Email: conorcorcoran@yahoo.com
Law Office of J. Conor Corcoran, P.C.
1500 John F. Kennedy Boulevard, Suite 620
Philadelphia, PA 19102
Telephone:  (215) 735-1135
Facsimile:    (215) 735-1175

Attorneys for Plaintiff
Joseph Daniel Lasica

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH DANIEL LASICA, an individual,<br><br>            Plaintiff,<br><br>       v.<br><br>AMERICA ONLINE, a California corporation,<br><br>            Defendant. | Case No. 2:15-CV-04230-GW<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF J.CONOR CORCORAN<br><br>Date:  September 3, 2015<br>Time:  8:30 a.m.<br>Ctrm: 10<br>Judge:  Hon. George H. Wu |

Plaintiff Joseph Daniel Lasica, by and through his undersigned counsel, the Law Office of J. Conor Corcoran, P.C., hereby files his opposition to the Defendant's Motion to Dismiss.  The Plaintiff's opposition is based upon the attached memorandum of points and authorities; the declaration of undersigned counsel and

**TroyGould PC**

1

CAPTION

03594-0001  269676.1

any exhibits attached thereto; the pleadings, motions and other filings of record; and any evidence or argument presented at any hearing on this matter.

Respectfully Submitted,

LAW OFFICE OF J. CONOR CORCORAN, P.C.

Date:  August 10, 2015      By: _____

J. Conor Corcoran, Esquire
Attorney for Plaintiff, J.D. Lasica

# **TABLE OF CONTENTS**

<u>Description</u>                                                                                                        <u>Page</u>

Table of Authorities………………………………………………………..4

Memorandum of Points and Authorities…………………………………….5

I.     Introduction ……………………………………………….5

II.    Statement of Facts…………………………………………. 6

III.   Legal Standard……………………………………………….7

IV.    Argument………………………………………….8

       **A.     Plaintiff has adequately pled a copyright infringement claim in Count I……………………………………8**

       **B.     Plaintiff has adequately pled two DMCA claims in Count II………………………………………11**

       **C.     Plaintiff has adequately pled a claim for declaratory relief in Count III…………………………...........18**

       **D.     Plaintiff withdraws punitive damage claims…………………19**

       **E.     Plaintiff's has adequately pled a claim for willful infringement………………………………………19**

V.     Conclusion……………………………………………….23

**TABLE OF AUTHORITIES**

**CASES**                                                                                    **PAGE**

Ashcroft v. Iqbal

      129 S. Ct. 1937, 1949-50 (2009)……………………………………………7

Bell Atl. Corp. v. Twombly

      550 U.S. 544, 570 (2007)...................................................................7

Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.

      499 U.S. 340, 361 (1991)…………………………………….......8

Gilligan v. Jamco Dev. Corp.

      108 F.3d 246, 249 (9th Cir.1997)……………………………..8

Moyo v. Gomez

      32 F.3d 1382, 1384 (9th Cir. 1994)………………………….........7

Scheuer v. Rhodes

      416 U.S. 232, 236 (1974)………………………………………..8

Ticketmaster, L.L.C. v. RMG Tech. Inc.

      507 F. Supp. 2d 1096 (C.D. Cal. 2007)…………………………11, 15

Pringle v. Adams

      C.D. Ca. No. 10-cv-1056 (January 27, 2011 order and opinion)………4,5


**STATUTES**

17 U.S.C. §410(c)…………………………………………………………8

17 U.S.C. § 501 et. seq.,………………………………………………….6

17 U.S.C. §1201 et. seq……………………………………………… 6, 11 – 16

28 U.S.C. §2201……………………………………………………….6


**RULES AND REGULATIONS**

Fed. R. Civ. P. 8(a)(2)………………………………………………….7

Fed. R. Civ. P. 12(b)(6)……………………………………………6, 7, 22

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

On or about September 11, 2013, Plaintiff took a unique photograph of Marissa Mayer, the CEO of Yahoo.com (hereinafter the "Mayer photograph"), and on the following day (September 12, 2013) the Plaintiff published the Mayer photograph on a website called Flickr.com, which showcases a variety of different photographs, from a variety of different photographers, for a variety of different purposes.

Plaintiff made the availability of the Mayer photograph, on Flickr.com, subject to an explicitly restrictive license agreement, known as the Creative Commons Attribution-Non Commercial 2.0 Generic License (hereinafter "the License").  The License specifically prohibited any user of Flickr.com from using the Mayer photograph for any commercial purpose whatsoever, which is why it is called a Non Commercial License.

Approximately two months later, on November 15, 2013, Defendant America Online nonetheless stole the Mayer photograph from Flickr.com, and used it as the headlining photograph in an article, written by J.T. O'Donnell, on Defendant America Online's employment website (a/k/a "jobs.aol.com") at the following URL address:  http://jobs.aol.com/articles/2013/11/15/tips-to-survive-a-yahoo-style-bell-curve-performance-review.

The Plaintiff timely registered the Mayer photograph with the Copyright Office, effective December 7, 2013, at Registration Number VA 1-883-093, and filed suit against the Defendant herein on June 5, 2015, and filed the instant Amended Complaint on July 14, 2015 (attached hereto and incorporated herein as Exhibit A).

The Defendant filed its Motion to Dismiss on July 31, 2015.

5

## II. **<u>STATEMENT OF FACTS</u>**

The Amended Complaint levied three (3) counts against the Defendant, to wit:

A.    Count I, for copyright infringement under 17 U.S.C. § 501 et. seq., and for statutory damages, attorney's fees and costs available thereunder;

B.    Count II, for three violations of the Digital Millenium Copyright Act (17 U.S.C. § 1201 et. seq.), specifically §1201(a)(2), §1201(b), and §1202(b), and for statutory damages, attorney's fees and costs available thereunder; and

C.    Count III, for declaratory relief under 28 U.S.C. §2201 et. seq.

*See* <u>Plaintiff's Amended Complaint</u>, ¶¶ 29-59.

By contrast, the Defendant's Motion to Dismiss asserts the following, pursuant to F.R.C.P. 12(b)(6):

A.    Count I fails to state a claim upon which relief can be granted;

B.    Count II fails to state a claim upon which relief can be granted;

C.    Count III fails to state a claim upon which relief can be granted;

D.    Punitive damages are unavailable to the Plaintiff; and,

E.    Plaintiff's Amended Complaint fails to state a claim for willful infringement.

*See* <u>Defendant's Motion to Dismiss</u>, p. 3, li. 15 through p. 11, li. 21.

Plaintiff shall address each of the Defendant's contentions, in tandem, *infra*.

## III.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  *See* Pringle v. Adams, C.D. Ca. No. 10-cv-1056 (January 27, 2011 order and opinion denying a Motion to Dismiss in a copyright infringement case), *citing* Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).

Rule 12(b)(6) is read in conjunction with Federal Rule of Civil Procedure Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2).[1] When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.[2]

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." [3] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[4]

To be clear, the issue on a motion to dismiss for failure to state a claim "is not whether the [claimant] will ultimately prevail, but whether the claimant is entitled to

---

[1] Ibid.
[2] Ibid, *citing* Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).
[3] Ibid, *citing* Bell Atl. Corp. v.Twombly, 550 U.S. 544, 570 (2007).
[4] Ibid, *citing* Iqbal, 129 S. Ct. at 1949 (*quoting* Twombly, 550 U.S. at 556).

offer evidence to support the claims" asserted.[5]  However, "[a]lthough for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[6]

## IV.  ARGUMENT

### A.  Plaintiff has adequately pled a copyright infringement claim in Count I

To allege a claim for copyright infringement, a plaintiff must allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."[7]

The Plaintiff's Amended Complaint clearly sets forth that the Plaintiff owns a valid copyright in the Mayer photograph, by virtue of Plaintiff's creation and publication of the photo[8], as well as its timely registration with the Copyright Office[9], said registration thus rendering the Plaintiff's copyright presumptively valid.[10]

As set forth in the Amended Complaint, the Plaintiff took the Mayer Photograph on September 11, 2013, and published the Mayer Photograph on

---

[5] Ibid, *citing* Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir.1997) (*quoting* Scheuer v. Rhodes, 416, U.S. 232, 236 (1974).

[6] Ibid, *citing* Iqbal, 129 S. Ct. at 1949-50 (*quoting* Twombly, 550 U.S. at 555).

[7] Ibid, *citing* Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361 (1991).

[8] See Plaintiff's Amended Complaint, ¶¶ 7,8.

[9] See Plaintiff's Amended Complaint, ¶ 13.

[10] *See* 17 U.S.C. §410(c).

8

September 12, 2013.[11]  The Plaintiff then attached Exhibits A and B demonstrating the same.

The Plaintiff explicitly alleged that the availability of the Mayer Photograph for use from the Flickr.com website was subject to a Non-Commercial License, which "explicitly prohibited the use of the Mayer Photograph for commercial purposes" and the Plaintiff attached a copy of that License as Exhibit B.[12]

Then, the Plaintiff clearly alleged that, on November 15, 2013, the Defendant had stolen the very same Mayer Photograph and used it in an article, written by J.T. O'Donnell and entitled "Tips to Survive a Yahoo-Style Bell Curve Performance Review," which was published by the Defendant on the Defendant's commercial employment website, at a particular web address controlled by the Defendant.[13] Again, the Plaintiff attached Exhibit C demonstrating the same.

Most importantly, the Plaintiff clearly alleged that the Defendant intentionally and willfully used the Mayer Photograph for commercial purposes, in violation of the Non-Commercial License, to wit:

> 9.    The Mayer photograph (*see* Exhibit A) was clearly stolen and unlawfully used by Defendant AOL on at least one occasion, **and intentionally done so for commercial purposes**, as evidenced by **its use in the aforementioned article** entitled "Tips to Survive a Yahoo-Style Bell Curve Performance Review," **which was posted on the Defendant's commercial website**.

---

[11] *See* Plaintiff's Amended Complaint, ¶¶ 7, 8.
[12] *See* Plaintiff's Amended Complaint, ¶ 8.
[13] *See* Plaintiff's Amended Complaint, ¶ 8, 9.

11.    **At no time has Plaintiff given Defendant AOL**, nor any of its agents and/or employees, **any permission whatsoever** to use the Mayer photograph **for commercial use**, such use being in explicit contradiction of the Creative Commons Non-Commercial License (Exhibit B) **as the aforementioned article is primarily intended as part of the Defendant's commercial activities for monetary gain**.

12.    **Therefore, Defendant AOL** intentionally, knowingly and **willfully**, directly and/or derivatively, outrageously, recklessly, negligently and/or maliciously stole the Plaintiff's photo, and thereby **infringed Plaintiff's copyright** in the Mayer photograph, **for the Defendant's commercial advantage and/or commercial purposes and/or monetary advantage**.

*See* Plaintiff's Amended Complaint, ¶¶ 9, 11, 12 (**emphasis added**).

By contrast, the Defendant actually argues in this portion of its motion, that "there is no allegation that AOL used the Mayer Photograph in an advertisement or for any other similarly "commercial purpose" within the meaning of the License."[14]

In so far as the Defendant has evidently ignored the very specific allegations from ¶¶ 9, 11, and 12 Amended Complaint, as aforementioned, the Plaintiff respectfully requests that this Honorable Court similarly dismiss every bit of the Defendant's Motion in this regard.

While the Defendant may have been entitled to use the Mayer photograph for non-commercial purposes, as any other general member of the public could have, the Defendant clearly used the photo to supplement a service and product that it provided

---

[14] *See* Defendant's Motion to Dismiss, p. 4, li. 11-15.

on its commercial employment website, and thereby did so for a commercial purpose, as extensively alleged in the Amended Complaint.[15]  The Plaintiff's Amended Complaint as to Count I should therefore stand in its entirety.

### B.    Plaintiff has adequately pled two DMCA claims in Count II

The Amended Complaint alleged three violations of the DMCA, to wit:

1) a violation per §1201(a)(2);

2) a violation per §1201(b); and,

3) a violation per §1202(b).

See Plaintiff's Amended Complaint, ¶¶ 41 – 55.

Per prior correspondence with opposing counsel[16], Plaintiff hereby withdraws his first claim per §1201(a)(2).

That said, Plaintiff's remaining claims in Count II, pursuant to §1201(b) and §1202(b), should remain.

### Plaintiff has sufficient pled a §1201(b) claim

Unlike the Defendant's interesting reliance on the Ticketmaster opinion alone, a full reading of Section 1201(b) allows that products or services offered to the public (such as the infringing article on Defendant's website), **_or any part thereof,_**

---

[15] As the Docket will also reflect, the Defendant filed a Corporate Disclosure Statement on June 29, 2015, revealing that the Defendant is wholly owned by Verizon Communications, Inc.  Both the Defendant and Verizon are enormous, for profit, corporations.

[16] See Defendant's Motion to Dismiss, Ex. 4 attached thereto.

that circumvents the protections of a technological measure, constitutes a violation of the DMCA, to wit:

> "(b) Additional Violations. — (1) **No person shall manufacture, import, <u>offer to the public, provide, or otherwise traffic in any</u> technology, product, service**, device, component, ***or part thereof***, that —
>
> (A) is primarily designed or produced for the purpose of circumventing protection afforded by a **technological measure** that effectively protects a right of a copyright owner under this title in a work or a portion thereof;
>
> (B) has only limited commercially significant purpose or use other than to circumvent protection afforded by a **technological measure** that effectively protects a right of a copyright owner under this title in a work or a portion thereof; or
>
> (C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing protection afforded by a **technological measure** that effectively protects a right of a copyright owner under this title in a work or a portion thereof."

*See* 17 U.S.C. §1201(b) (**emphasis added**).

A "technological measure" is then defined as something that "'effectively protects a right of a copyright owner under this title' if the measure, in the ordinary course of its operation, prevents, restricts, or otherwise limits the exercise of a right of a copyright owner under this title." *See* 17 U.S.C. § 1201(b)(2).

As specifically alleged in the Amended Complaint, the Non Commercial License from Creative Commons was therefore a "technological measure" under §1201(b)(2).[17] The License forbid any use of the Mayer Photograph for commercial

---

[17] *See* <u>Plaintiff's Amended Complaint</u>, ¶¶ 44 – 49.

purposes, thereby serving as a "technological measure" protecting Plaintiff's copyright in the photo and his right to decide how the picture could be used by another party.  The notice attached to the Mayer Photograph alerted the Defendant to the same restriction – namely, that any reproduction was strictly for non-commercial use - and that notice appeared in a hyperlink beside the photo on Flickr.com, as demonstrated in the attached Exhibit B to the Amended Complaint[18] as well as Exhibit 1 to Defendant's Motion.[19]

Despite the notice of the Non-Commercial contingency, acknowledged by all parties, the Defendant nonetheless used the photograph in its commercial enterprise anyway, and in so doing, included the Plaintiff's name, in a gutter credit, beneath the stolen Mayer Photograph, as a small but visible part of the larger infringing article as a whole.[20]  The gutter credit enabled the Defendant to give the impression that the Plaintiff consented to the use of the purloined picture and his name thereunder, and the Plaintiff alleged as much, to wit:

> "47.   Any use of Plaintiff's photograph was subject to a Creative Commons Non-Commercial License (*see* Exhibit B), said license being a "**technological measure**" pursuant to §1201(b)(2) (emphasis added).
>
> 48.   Defendant's intentional inclusion of the gutter credit therefore constitutes a violation of 17 U.S.C. §1201(b), which holds that:

---

[18] *See* Plaintiff's Amended Complaint, Ex. B attached thereto.

[19] *See* Defendant's Motion to Dismiss, Ex. 1 attached thereto.

[20] *See* Plaintiff's Amended Complaint, Ex. C attached thereto.

"(b) Additional Violations. — (1) No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that —

> (A) is primarily designed or produced for the purpose of circumventing protection afforded by a **technological measure** that effectively protects a right of a copyright owner under this title in a work or a portion thereof;
>
> (B) has only limited commercially significant purpose or use other than to circumvent protection afforded by a **technological measure** that effectively protects a right of a copyright owner under this title in a work or a portion thereof; or
>
> (C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing protection afforded by a **technological measure** that effectively protects a right of a copyright owner under this title in a work or a portion thereof."

See 17 U.S.C. §1201(b) (emphasis added).

49.    Plaintiff's name (as represented in the gutter credit in Exhibit C) was intentionally used by the Defendant when it stole Plaintiff's photograph, as aforementioned, and Defendant then intentionally republished the photo, using the gutter credit as demonstrated in Exhibit C, knowing (or having reasonable grounds to know) that such inclusion would induce, enable, facilitate or otherwise conceal Defendant's blatant copyright infringement by conveying the false message that Plaintiff approved of the use of Mayer photograph in the Defendant's article, when Plaintiff did not do so.

See Plaintiff's Amended Complaint, ¶¶ 47-49.

Therefore, the Defendant's use of the gutter credit was primarily designed to circumvent the protections afforded by the Non-Commercial License, because it allowed the Defendant to produce a commercial article on its employment website, with the unlawful impression that the Plaintiff consented to both the use of his Mayer Photograph therein, and his name thereunder – when that was explicitly contrary to

14

the Plaintiff's desires, as expressed in the technological measure of the Non-Commercial License, acknowledged by all parties hereto.

The Defendant's reliance on the Ticketmaster decision is telling, particularly its declaration that "Section 1201(b)(1) makes it wrongful to traffic in devices that circumvent technological measures that protect the *rights* of a copyright holder in a work."[21]  Of particular note is the Defendant's insistence, pursuant to Ticketmaster, that there were no allegations that Defendant manufactured a particular "product" or piece of "technology," as if a certain physical device had to be employed to trigger §1201(b).[22]  The only thing that had to be violated was the Non-Commercial License, and the Defendant did so with flying colors, as alleged throughout the Amended Complaint.

Had the Defendant fully recited, let alone read, this particular provision of the DMCA, it would have instead been compelled to admit that the gutter credit itself, accompanying the Mayer Photograph on its employment website, constitutes a violation of §1201(b).  Instead, the Defendant relies upon a cursory analysis of Ticketmaster, and would have this Court believe that it needed to create a new device to thwart the DMCA.

---

[21] *See* Defendant's Motion to Dismiss, p. 7, li. 5-7, *citing* Ticketmaster, 507 F. Supp. 2d at 1112.

[22] *See* Defendant's Motion to Dismiss, p. 8, li. 1-3, 9-14.

15

Incredibly, the Defendant continues in this vein, and argues in its Motion that it was permitted to use the photo, and that the gutter credit, itself, was in satisfaction of the provisions of the License requiring due credit to be provided.

Unfortunately for the Defendant, identifying that it got the Mayer Photograph from "J.D. Lasica/Flickr" carries the concomitant impression that the Plaintiff consented to its use in a commercial enterprise such as the Defendant's publication.[23]

Nothing could be further from the truth, as fully set forth in Plaintiff's Amended Complaint, and his insistence upon the terms of the Non Commercial License.  The Defendant's brazen disregard thereof – including the gutter credit's suggestion that the Plaintiff consented to its inclusion in the article – warrants Count II's allegations under §1201(b), and they should therefore stand.

**<u>Plaintiff has sufficiently pled a §1202(b) claim</u>**

17 U.S.C. §1202(b) holds that:

"(b) No person shall, without the authority of the copyright owner or the law –

    (1) intentionally remove or alter any copyright management information,

    (2) distribute…copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or

    (3) distribute…or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has

---

[23] *See* <u>Plaintiff's Amended Complaint</u>, Ex. C attached thereto.

been removed or altered without authority of the copyright owner or the law,

knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate or conceal an infringement of any right under this title."

*See* 17 U.S.C. §1202(b).

Copyright management information was further defined as "(t)he name of, and other identifying information about, the author of a work (or) (t)he name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright." *See* 17 U.S.C. §1202(c)(2) and (3).

However, as set forth in Plaintiff's Amended Complaint and Exhibit C attached thereto, the Defendant created a gutter credit, in its infringing article, to give the false impression that it was using the Mayer Photograph with the Plaintiff's permission, and incorrectly identified therein that the picture came from "J.D. Lasica/Flickr."[24]

As shown in the Copyright Registration attached to the Amended Complaint, however, Flickr does not have any authorship or ownership or copyright interest in the Mayer photograph.[25]

Such copyright interest belongs to Plaintiff alone, and the Defendant's use of that incorrect gutter credit therefore triggers §1202(b), which forbids the alteration of

---

[24] *See* Plaintiff's Amended Complaint, ¶¶ 49-52, and Exhibit C attached thereto.

[25] *See* Plaintiff's Amended Complaint, Exhibit D attached thereto.

17

such copyright information - as defined in §1202(c)(2) and (3) - without Plaintiff's permission, permission that the Defendant never sought in any fashion.

Count II's allegations under §1202(b) should therefore stand.

### C. Plaintiff has adequately pled a declaratory relief claim in Count III

The Defendant's sole argument in this regard is that there is no claim of copyright infringement duly articulated in Count I, and therefore, there can be no controversy concerning the Defendant's own copyright in its own article on its own website, as set forth in Count III.[26]

Should this Court rule that a copyright infringement claim has been adequately pled in Count I, it therefore follows that the copyright interests the Defendant has in the infringing article at issue - "Tips to Survive a Yahoo-Style Bell Curve Performance Review" – are also at play, because whether by registration or by common law, the Defendant enjoys a copyright interest in a commercial article that is, in some measure, derivatively based upon Plaintiff's Mayer Photograph. Plaintiff thoroughly pleaded these contentions, at length, in his Amended Complaint.[27]

Accordingly, Plaintiff respectfully submits that this Count III should also survive Defendant's Motion in this regard.

---

[26] *See* Defendant's Motion to Dismiss, p. 9, li. 24 – p. 10., li. 8.

[27] *See* Plaintiff's Amended Complaint, ¶¶ 56 – 59.

**D.**  **Plaintiff withdraws punitive damage claims**

Plaintiff hereby withdraws any punitive damage claim, but otherwise maintains his claims to actual or statutory damages, as well as attorney's fees and costs, and/or any other damages otherwise set forth in the Amended Complaint.

**E.**  **Plaintiff has adequately pled a claim for willful infringement**

Finally, the Defendant seeks a ruling from this Court to strike any claim for willful infringement, allegedly because A) the Amended Complaint fails to set forth any facts alleging that the Defendant knew "its alleged conduct could constitute copyright infringement"[28]; B) the Plaintiff didn't notify the Defendant of the infringement[29]; C) the Mayer Photograph was simply available for public use;[30] and D) the Defendant took the infringing photo down upon knowledge of this lawsuit.[31]

The Defendant certainly does not dispute that it is one of the largest media companies in the world, and that it used Plaintiff's picture in the article on its commercial employment website, jobs.aol.com.[32]

---

[28] *See* <u>Defendant's Motion to Dismiss</u>, ¶¶ p. 11, li. 5 – 6.
[29] *See* <u>Defendant's Motion to Dismiss</u>, ¶¶ p. 11, li. 6 – 12.
[30] *See* <u>Defendant's Motion to Dismiss</u>, ¶¶ p. 11, li. 6 – 12.
[31] *See* <u>Defendant's Motion to Dismiss</u>, ¶¶ p. 11, li. 12 – 19.
[32] As the Docket will also reflect, the Defendant filed a Corporate Disclosure Statement on June 29, 2015, revealing that the Defendant is wholly owned by Verizon Communications, Inc. Both the Defendant and Verizon are enormous, for profit, corporations.

19

Evidently, however, the Defendant would have this Court believe that, despite the clear and acknowledged notice of the Non-Commercial License provided beside the Mayer Photograph on Flickr.com, its use of the Mayer photograph, in an article on its commercial employment website, somehow does not constitute willful copyright infringement. The Defendant clearly had this knowledge, despite its facetious persiflage to the contrary, for as implicitly or explicitly acknowledged throughout its Motion to Dismiss, the Defendant had to have seen the License in the first place, in order to fabricate this lukewarm exemption therefrom.

Assuming that such chutzpah has not gone unnoticed, the Plaintiff would also like to point out to this Court that the Amended Complaint contains no less than five allegations of willful infringement,[33] and no less than five allegations that the Defendant knowingly ignored the explicit Non-Commercial prohibitions of the License,[34] so it could use the Mayer Photograph for commercial purposes instead.

For example, the Plaintiff alleged as follows:

"9.    The Mayer photograph (*see* Exhibit A) was clearly stolen and unlawfully used by Defendant AOL on at least one occasion, **and intentionally done so for commercial purposes**, as evidenced by its use in the aforementioned article entitled "Tips to Survive a Yahoo-Style Bell Curve Performance Review," which was posted on the Defendant's commercial website. *See* Exhibit C.

10.    Defendant AOL **knew** it had taken Plaintiff's photograph, and **attempted to obscure the unauthorized theft thereof** by printing the Plaintiff's name and the source of the photograph, Flickr.com, in a gutter credit immediately beneath the Mayer photograph as published in Exhibit C.

---

[33] *See* Plaintiff's Amended Complaint, ¶¶ 12, 26, 28, 32, 35.
[34] *See* Plaintiff's Amended Complaint, ¶¶ 12, 26, 45, 46, 49.

12.     Therefore, Defendant AOL intentionally, knowingly and willfully, directly and/or derivatively, outrageously, recklessly, negligently and/or maliciously stole the Plaintiff's photo, and thereby infringed Plaintiff's copyright in the Mayer photograph, for the Defendant's commercial advantage and/or commercial purposes and/or monetary advantage.

26.     Defendant knowingly and willfully, directly and/or derivatively, copied without independent creation, Plaintiff's copyrighted photograph for the specific purpose of infringing upon Plaintiff's copyright and to unlawfully enrich the Defendant at Plaintiff's expense, as Defendant never obtained a license from the Plaintiff, let alone his consent or permission, for the specific use of his copyrighted photograph in the infringing article or website.

28.     Defendant knowingly and willfully, directly and/or derivatively, outrageously, intentionally, wantonly, recklessly and/or maliciously copied without independent creation, Plaintiff's copyrighted photograph for the specific purpose of infringing upon Plaintiff's copyright and to unlawfully enrich the Defendant at Plaintiff's expense, as Defendant never obtained a license from the Plaintiff, let alone his consent or permission, for the specific use of his copyrighted photograph in the infringing article and website as aforementioned.

32.     As set forth more comprehensively above, Defendant has willfully and deliberately infringed upon Plaintiff's copyrighted photograph, resulting in extraordinary sums of ill-gotten profits."

49.     Plaintiff's name (as represented in the gutter credit in Exhibit C) was intentionally used by the Defendant when it stole Plaintiff's photograph, as aforementioned, and Defendant then intentionally republished the photo, using the gutter credit as demonstrated in Exhibit C, knowing (or having reasonable grounds to know) that such inclusion would induce, enable, facilitate or otherwise conceal Defendant's blatant copyright infringement by conveying the false message that Plaintiff approved of the use of Mayer photograph in the Defendant's article, when Plaintiff did not do so.

See Plaintiff's Amended Complaint, ¶¶ 9, 10, 12, 26, 28, 32, 49.

The Plaintiff also explicitly alleged, throughout Count II, that the Defendant intentionally used a gutter credit to circumvent the Plaintiff's copyright.[35]

---

[35] See Plaintiff's Amended Complaint, ¶¶ 43, 45, 46, 48-52.

Accordingly, the suggestion that the Plaintiff has failed to set forth factual allegations, warranting a willful infringement claim, is patently not true, given the aforementioned citations to the Amended Complaint.

One final note: it is true that the Plaintiff never sent any kind of cease and desist letter in advance of this litigation – and that is precisely because there is no such obligation to do so, nor can the Defendant cite any such obligation. This insinuation on the part of the Defendant utterly lacks legal merit, as does the Motion to Dismiss in its entirety.

The Plaintiff has set forth a sufficient set of facts that - construed in its favor alone per the tenets of 12(b)(6) interpretation - justify its copyright claim in Count I, its DMCA claims in Count II, and the concomitant request for declaratory relief in Count III. Discovery will portend the ultimate success of these allegations at trial, but for the time being, they remain adequately plead, in every respect, for the purposes of this instant proceeding.

## V.   CONCLUSION

For all of the foregoing reasons, the Plaintiff respectfully requests that the Defendant's Motion to Dismiss be denied in its entirety.

Respectfully submitted,

LAW OFFICE OF J. CONOR CORCORAN, P.C.

Dated: 8/10/15

J. CONOR CORCORAN, ESQ.
Attorney for Plaintiff